IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GRADY C. HART, JR., *et al.*, | ) | CASE NO. 1:06 CV 780 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| THE RIDGE TOOL COMPANY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

## I.  Introduction

This is a disability and age discrimination case brought by plaintiff Grady C. Hart, Jr., proceeding *pro se*, against his former employer, The Ridge Tool Company.  As presently postured, the case presents claims that Ridge wrongfully terminated Hart because of a disability, his age, and in retaliation for making a complaint of age discrimination.  District Judge Donald C. Nugent has referred this case to me for general, pretrial supervision and for report and recommendation on any dispositive motions.[1]

Ridge has filed a motion for summary judgment directed to all pending claims.[2]  Hart has filed a memorandum in opposition to the motion,[3] and Ridge has filed a reply in support

---

[1] ECF # 8.

[2] ECF # 52.

[3] ECF # 54.

of the motion.[4]  Hart has filed a supplemental brief opposing the motion without leave of court.[5]

Ridge's motion presents two dispositive issues for decision:

- A Social Security finding of a disability predating an employee's termination does not per se bar a claim of wrongful termination because of disability or age.  Nevertheless, to create a genuine issue of material fact, the employee must present evidence of capability to perform the essential functions of his job and of qualification for that job despite his representations to SSA, and SSA's finding, of disability.  Hart represented to SSA that he was disabled as of a time predating his termination, and SSA so found.  Has Hart produced sufficient evidence of his capabilities to avoid summary judgment on his discrimination claims?

- To establish retaliatory discharge, the plaintiff must establish a causal link between his discrimination complaint and his discharge.  The causal link does not exist absent evidence that the termination occurred shortly after the complaint and that the plaintiff was treated differently than other employees. Here Hart complained of a supervisor's ageist remarks in January of 2001 but was not discharged until September of 2004. Does that evidence create a genuine issue of material fact as to the causal link?

After careful consideration of the briefs and the Civil Rule 56 record, I conclude that Hart's representations of disability to the Social Security Administration, and that agency's finding of disability predating his termination, in the absence of a sufficient explanation to the contrary, defeats the disability and age discrimination claims.  Furthermore, Hart's 2001 complaint about age-related remarks made by a supervisor was too remote from his termination to establish a triable issue of a causal link between that complaint and the

---

[4] ECF # 55.

[5] ECF # 58.  Ridge has filed a motion to strike that brief and affidavits submitted with it.  ECF # 59.  I will rule on that motion in a separate entry.

termination, particularly in light of the condition of Hart's health at the time of the termination.  I must, therefore, recommend that Judge Nugent grant Ridge's motion for summary judgment.

## II.  Course of Proceedings

Prior rulings shape the current posture of this case.

As a result of a status conference held by me and briefing on Ridge's motion for judgment on the pleadings, Hart clarified that he was pursuing claims under federal law only.[6]  I recommended the granting of Ridge's motion for judgment on the pleadings to the extent of limiting Hart's claims to the scope of his EEOC complaint.[7]  That complaint asserted that Ridge had wrongfully terminated Hart because of his disability and age and in retaliation for claims about age discrimination.  Neither party objected to that recommendation.

Judge Nugent issued a memorandum opinion and order granting my recommendation to the extent of limiting Hart's claims to wrongful termination because of disability and age and in retaliation for claims about age discrimination.[8]

Accordingly, I now have before me three claims for relief:  (1) termination of employment because of disability in violation of the Americans With Disabilities Act

---

[6] ECF # 36 at 2-3.

[7] *Id.* at 9.

[8] ECF # 38 at 4.

-3-

("ADA"),[9] (2) termination of employment because of age in violation of the Age Discrimination and Employment Act ("ADEA"),[10] and (3) termination of employment in retaliation for making a complaint of age discrimination.[11]

Ridge has referenced and has made arguments in opposition to charges of libel and fraud in the brief in support of the motion for summary judgment.[12]  Hart has also made reference to such claims in one of his briefs.[13]

Ridge states that Hart filed a motion to charge defendant with libel and fraud on July 5, 2007.[14]  I can find no such motion on the Court's docket.  Nevertheless, in a minute order entered on July 11, 2007, I granted Hart's request to withdraw without prejudice claims of libel and fraud.[15]  In that order I stated that such charges could be refiled with any motion for summary judgment consistent with the schedule set out in the minute order, which required motions for summary judgment to be filed by September 5, 2007.  Thereafter, I extended that date to October 2, 2007.[16]  Hart did not file a motion for summary judgment reasserting any libel or fraud claim by October 2, 2007 or thereafter.  His only reference to

---

[9] 42 U.S.C. § 12101 *et seq.*

[10] 29 U.S.C. § 623 *et seq.*

[11] 29 U.S.C. § 623(d)

[12] ECF # 52 at 18-20.

[13] ECF # 58 at 8-9.

[14] ECF # 52 at 18.

[15] ECF # 41.

[16] ECF # 47.

those claims appears in his second brief, which was filed out of rule and without leave of court.  Accordingly, no libel or fraud claims are currently part of this case.

## III.  The Facts

### A.  Standards for reviewing the evidence as to relevant ("material") facts

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[17]  A fact is "material" only if its resolution will affect the outcome of the lawsuit.[18]  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[19]  As a general matter, the judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[20] The court will not consider non-material facts [21]  Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[22]  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that

---

[17] Fed. R. Civ. P. 56(c).

[18] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[19] *Id.* at 252.

[20] *Anderson*, 477 U.S. at 248.

[21]  *Id.* at 249.

[22] *Anderson*, 477 U.S. at 256.

results in a conflict of material fact to be solved by a jury."[23] "In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[24]

## B.    The material, undisputed facts

In consideration of the above standards, I find the facts set out below material, undisputed, and dispositive of Ridge's motion.  The Civil Rule 56 records contain many additional facts regarding Hart's employment with Ridge, communications between Hart and Ridge, and the details of Hart's medical condition over time; and disputes exist as to many of those facts.  These additional facts, and in particular those in dispute, are not material to the dispositive legal issues here.

Ridge manufactures equipment and tools for the plumbing industry and employs a sales force to sell these tools nationally and internationally to wholesale distributors.[25]  In 1984, Ridge hired Hart to work as a district sales manager, for which he received both salary and commission as compensation.[26]  Initially, Hart had a sales territory in Alabama, but that territory changed over time.[27]

---

[23] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir.1995).

[24] *BDT Products, Inc. v. Lexmark Int'l Inc.*, 124 F. App'x 331 (6th Cir. 2005).

[25] ECF # 51, Attachment 1, Deposition of Grady Hart, Vol. 1 ("I Hart Dep.") at 21-22; ECF # 52, Attachment 1, Affidavit of Cliff Wells ("Wells Aff.") at ¶ 3.

[26] ECF # 53 at ¶ 2; ECF # 51, Deposition of Patrick Comeau at 12; ECF # 51, Attachment 7, Deposition of Cliff Wells at 5.

[27] I Hart Dep. at 19-20.

Hart's position as a district sales manager required him to put together business plans for his customers, to travel to the customers' sites to demonstrate Ridge's tools, and to physically train the customers in the use of the tools purchased.[28] Most of the time, Hart drove a company-owned vehicle to make sales calls.[29] Hart was required to physically load and unload the tools he used during sales calls, some of which weighed between 300 and 500 pounds each.[30]

In 1999, Hart sustained a neck injury at work.[31] In 2002, Hart's doctor placed hin on a permanent lifting restriction of 30 pounds.[32] In 2002, Hart began experiencing blackouts that prevented him from driving.[33]

In February of 2003, Hart applied for and was granted a medical leave of absence.[34] Ridge's medical leave of absence policy provided for continuation of employment for up to 12 months if long-term disability has not been approved and up to 15 months if long-term disability is approved.[35]

---

[28] I Hart Dep. at 20-21, 23-24.

[29] I Hart Dep. at 25-26; ECF # 51, Attachment 2, Grady Hart Deposition Transcript, Volume II ("II Hart Dep.") at 65.

[30] I Hart Dep. at 27-29, 46-47.

[31] I Hart Dep. at 48.

[32] I Hart Dep. at 61, II Hart Dep. at 17.

[33] II Hart Dep. at 17-18.

[34] I Hart Dep. at 31; ECF # 51, Attachment 4, Hart Deposition Exhibit ("Hart Dep. Ex.") 4.

[35] Hart Dep. Ex. 8.

In August of 2004, Ridge learned that the third-party insurance carrier had denied Hart's claim for long-term disability benefits.[36]  At that time, Hart had been on medical leave for more than 18 months, beyond Ridge's one-year leave limit under its policy, and Ridge had paid Hart full salary for the entire leave period, even though the policy provided only for 13 weeks of full salary continuation.[37]  Hart had not given Ridge medical documentation releasing him to work.[38]  Accordingly, by letter dated September 7, 2004, Ridge notified Hart of the termination of his employment effective September 10, 2004.[39]  Patrick Comeau, Ridge's Vice President of Human Resources, and Clifford Wells, Ridge's Director of Sales North America, made the decision to terminate Hart's employment.[40]

Hart applied for Social Security disability benefits in October of 2004.[41]  The Social Security Administration found Hart disabled as of February 28, 2003.[42]  In the course of applying for those benefits, Hart represented to the agency that he was totally disabled.[43]

---

[36] II Hart Dep. at 71, Hart Dep. Ex. 10.

[37] ECF # 52, Attachment 2, Affidavit of Patrick Comeau ("Comeau Aff.") at ¶ 4.

[38] *Id.* at ¶ 5.

[39] II Hart Dep. at 71, Hart Dep. Ex. 10.

[40] Comeau Aff. at ¶ 4, Wells Aff. at ¶ 9.

[41] ECF # 1, Attachment 9, Complaint Ex. I.

[42] *Id.*

[43] I Hart Dep. at 39.

The retaliation claim centers on a letter sent in February of 2001 by Hart to Fred Pond, then President of Ridge, complaining about an ageist remark made by a Mike Slemko.[44] This letter followed a sales meeting in Puerto Vallarta, Mexico, where Slemko made the comment "I will not hire any older people to work under me.  I will be looking for younger guys."[45] Slemko became Southeast Regional Sales Manager and Hart's supervisor in April of 2001.[46] Slemko also made a remark about a need to hire young, aggressive salesmen at a meeting with a potential customer in 2002.[47]  As stated above, Ridge terminated Hart effective September 10, 2004.[48]  Patrick Comeau and Clifford Wells made the termination decision.[49] There is no evidence that Slemko participated in this decision.

## IV.  Analysis

Because in large part the same analysis applies to Hart's termination claim based on age and his claim based on disability, I will discuss them together.

---

[44] II Hart Dep. at 121; Comeau Aff. at ¶ 8 and Exhibit B.

[45] ECF # 54, Memorandum in Opposition to Motion for Summary Judgment, Attachment 2, Exhibit 2, Affidavit of Mike Johnson; Comeau Aff. at ¶ 6.

[46] Comeau Aff. at ¶ 7.

[47] ECF # 54, Memorandum in Opposition to Motion for Summary Judgment, Attachment 2, Exhibit 3, Affidavit of Douglas Stack.

[48] Hart Dep. Ex. 10.

[49] Comeau Aff. at  ¶ 4, Wells Aff. at ¶ 9.

**1.    *Legal standards for wrongful termination based on disability***

To establish a prima facie case of wrongful discharge based on disability, a plaintiff must prove that (1) he is an individual with a disability; (2) he is otherwise qualified to perform the requirements of his job, with or without reasonable accommodations; and (3) he was terminated solely by reason of his disability.[50]  If the plaintiff proves a prima facie case, then the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the discharge.[51]  If the employer provides such a reason, then the burden shifts back to the plaintiff employee to prove that the stated reasons are pretext.[52]

**2.    *Legal standards for wrongful termination based on age***

To establish a prima facie case of wrongful discharge based on age, the plaintiff must show that:  (1) he was at least 40 years old at the time of the discharge; (2) he was discharged; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker.[53]  If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant employer to articulate a non-discriminatory reason for the discharge.[54]  If the employer provides such a reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was a pretext for age discrimination.[55]

---

[50] *Williams v. London Util. Comm'n*, 375 F.3d 424, 428 (6th Cir. 2004).

[51] *Id.*

[52] *Id.*

[53] *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007).

[54] *Id.*

[55] *Id.*

-10-

Alternatively, an employee may show wrongful termination based on age bias by direct evidence of discriminatory statements.[56]  The Sixth Circuit has identified four factors for consideration in evaluating such statements:  (1) whether a decision-maker or an agent within the scope of his employment made the statement; (2) whether the statements related to the decision-making process; (3) whether the statements were more than merely vague, ambitious or isolated remarks; and (4) whether they were made proximate in time to the act of termination.[57]

Regardless of whether the proof proceeds by direct evidence or through a prima facie case and burden shifting thereafter, the plaintiff employee must prove that a causal link exists between the age discrimination and the discharge.[58]

### 3.    *A Social Security disability determination as a barrier to a disability or age-based wrongful termination claim*

The Social Security disability insurance program provides benefits to a person with a disability so severe that he is "unable to do [his] previous work" and "cannot ... engage in any other kind of substantial gainful work which exists in the national economy."[59]  Under the ADA, the plaintiff claimant must be a "qualified individual with a disability" – that is,

---

[56] *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477 (6th Cir. 2002).

[57] *Skelton v. Sara Lee Corp.*, — F. App'x —, 2007 WL 2859770, at *4 (6th Cir. Oct. 3, 2007); *Peters*, 285 F.3d at 477-78, *Zivkovic v. Juniper Networks, Inc.*, 450 F. Supp. 2d 815, 824 (N.D. Ohio 2006).

[58] *Bush v. Dictaphone Corp.*, 161 F.3d 363, 370 (6th Cir. 1998); *Hillman v. Safeco Ins. Co.*, 190 F. Supp. 2d 1029, 1035 (N.D. Ohio 2002).

[59] 42 U.S.C. § 423(d)(2)(A).

-11-

"an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds...."[60] Under the ADEA, the plaintiff claimant must show that he was qualified for his position at the time of termination, defined as "performing his job at a level which met his employer's legitimate expectations."[61]  Where the Social Security Administration has found a plaintiff disabled by its standards, as of a time on or before the discharge date, there exists a facial inconsistency with that plaintiff's allegations that he was qualified for his position at the time of termination under either ADA or ADEA standards.

The Supreme Court in *Cleveland v. Policy Management Systems Corporation*[62] set out the analysis for addressing this inconsistency.  In the unanimous decision, the Court analyzed the disability requirements under both the Social Security program and the ADA.[63]  In particular, the Court noted that the ability of the individual to perform his job with or without reasonable  accommodations is considered under the ADA but is not a consideration for purposes of Social Security disability.[64]  A Social Security disability determination, therefore, will not automatically preclude a claim under the ADA.[65]

---

[60] 42 U.S.C. § 12111(8).

[61] *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 372 (6th Cir. 1999).

[62] *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999).

[63] *Id.* at 801-05.

[64] *Id.* at 803-04.

[65] *Id.* at 804-05.

The Court went on to hold, however, that in the face of a Social Security disability

determination, an ADA claimant must provide a reasonable explanation for the discrepancy

between the Social Security finding and the necessary proof that he can perform the essential

functions of his job with or without reasonable accommodation.

> An ADA claimant bears the burden of proving that she is a "qualified
> individual with a disability" – that is, a person "who, with or without
> reasonable accommodation, can perform the essential functions" of her job.
> And a plaintiff's sworn assertion in an application for disability benefits that
> she is, for example, "unable to work" will appear to negate an essential
> element of her ADA case – at least if she does not offer a sufficient
> explanation.  For that reason we hold that an ADA plaintiff cannot simply
> ignore the apparent contradiction that arises out of the SSDI total disability
> claim. Rather, she must proffer a sufficient explanation. ****[A] party cannot
> create a genuine issue of material fact sufficient to survive summary judgment
> simply by contradicting his or her own previous sworn statement, by, saying,
> filing a later affidavit that flatly contradicts that party's earlier sworn statement
> without explaining the contradiction or attempting to resolve the disparity.
> ****When faced with a plaintiff's previous sworn statement asserting "total
> disability" or the like, the court should require an explanation of any apparent
> inconsistency with the necessary element of an ADA claim.   To defeat
> summary judgment, that explanation must be sufficient to warrant a reasonable
> juror's concluding that, assuming the truth of, or the plaintiff's good-faith
> belief in, the earlier statement, the plaintiff could nonetheless "perform the
> essential functions" of her job, with or without "reasonable accommodation."[66]

The approach adopted by the Supreme Court in *Cleveland* is consistent with the Sixth

Circuit's earlier precedents[67] and has been applied by that court thereafter.[68]

The Sixth Circuit has not yet had the opportunity to consider the *Cleveland* decision

in the context of the ADEA.  Both the Third Circuit and the Fifth Circuit have done so,

---

[66] *Id.* at 806-07 (citations omitted).

[67] *Griffith v. Walmart Stores, Inc.*, 135 F.3d 376 (1998).

[68] *Williams v. London Util. Comm'n*, 375 F.3d 424, 429 (6th Cir. 2004).

-13-

however.[69]  The Third Circuit, in *Detz v. Greiner Industries, Inc.*, explained that similarities

between the proofs for the ADA and the ADEA that make the approach adopted by the

Supreme Court in the *Cleveland* case applicable to ADEA claims.

> While *Cleveland* only specifically addressed a conflict between SSDI and
> ADA claims, the analysis is not limited in its application to cases involving
> those particular statutory and administrative schemes. Like an assertion that
> one is a "qualified individual" for ADA purposes, a declaration that one is a
> "qualified individual" under the ADEA is a "context-related legal conclusion."
> Therefore, a prima facie showing under the ADEA that conflicts with earlier
> statements made to the SSA is subject to the same analysis, as the reasoning
> of the Court in Cleveland also applies in the context of the ADEA. In fact, the
> District Court here properly observed that "scenarios may exist in which it is
> possible for a plaintiff's ADEA claim to be consistent with his or her earlier
> application for Social Security benefits." *Detz*, 224 F. Supp. 2d at 916.  For
> example, a person who files for and is granted SSDI benefits several months
> after his discharge would not be precluded from advancing a successful ADEA
> claim against his employer where his disability did not prevent him from
> working at the time of his discharge, but where it subsequently worsened to a
> point where he is no longer able to perform that work. It is true that these
> scenarios might be less common with ADEA claims than they would be with
> claims under the ADA, because the ADEA does not include any additional
> considerations for identifying "qualified individuals" that might be analogized
> to the "reasonable accommodation" language of the ADA. *Id.* at 915. This
> does not, however, render *Cleveland* any less applicable to cases involving
> SSDI claims followed by attempts to establish the elements of a prima facie
> showing under the ADEA.[70]

I agree with the Third Circuit's analysis and will, therefore, apply the analytical

framework of the *Cleveland* case to both the disability and age claims made by Hart here.

---

[69] *McClarren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 462-63 (5th Cir. 2005); *Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 117 (3rd Cir. 2003).

[70] *Detz*, 346 F.3d at 117.

-14-

### 4.     Hart's wrongful termination claim based on disability

Applying the analytical approach adopted by the Supreme Court in *Cleveland*, Hart

has failed to proffer a sufficient explanation for the disparity between the Social Security

Administration's finding that he was disabled as of February 28, 2003 and his claim under

the ADA that he could perform the essential functions of his job, with or without reasonable

accommodations, at the time of his termination on September 10, 2004.

In his deposition testimony, Hart made clear that he understood what total disability

meant, that his statements to the Social Security Administration about his total disability

were true, and that his physical condition has become worse over time.

> Q.    [By defense counsel] So tell me what totally disabled means to you,
> Mr. Hart?
>
> A.    [By Plaintiff] It means I'm not capable of performing work.
>
> Q.    And when you told that to the federal government in going through that
> process, you were telling the truth, weren't you?
>
> A.    Yeah. They tested me and they determined that.
>
> Q.    So you gave them information and told them and they agreed that you
> were totally disabled after doing tests, correct?
>
> A.    Yes.
>
> Q.    And since those tests were performed, has your physical condition gotten
> better or worse?
>
> A.    Worse.[71]

_____

[71] I Hart Dep. at 39.

The record otherwise does not support a factual dispute as to whether Hart could perform the essential functions of his job as of the date of termination. Those functions, as identified by Hart, including devising business plans for his customers, loading Ridge's tools into his vehicle, driving to make calls on customers, and unloading and physically demonstrating the tools to the customers.[72] Hart testified that memory problems prevent him from devising the necessary business plans.[73] He was placed under a 30-pound lifting restriction in January of 2002, which has never been removed.[74] Finally, Hart began experiencing blackouts in February of 2002 that ultimately made it unsafe for him to drive to sales calls.[75]

In his briefs, Hart makes several arguments that with accommodations he could do his job despite the 30-pound lifting limitation.[76] He argues that Ridge failed to accommodate him by providing lifting devices.[77] He also makes the argument that Ridge's policy of requiring salesmen to lift heavy tools without lifting devices generally violated OSHA regulations.[78]

---

[72] I Hart Dep. pp. 20-21, 23-26; II Hart Dep. at 65.

[73] I Hart Dep. at 6-7, 30-31, 41.

[74] I Hart Dep. at 29, 47, 61-62.

[75] I Hart Dep. at 9-10.

[76] *E.g.*, ECF # 54 at 13.

[77] *Id.* at 19-25.

[78] ECF # 53 at ¶¶ 5, 12, and 17; ECF # 58 at 3-5.

-16-

These generalized arguments do not constitute sufficient proof that Hart could have done his work as a district sales manager in September of 2004 even if Ridge had supplied him with some lifting devices at the time.  He offers no proof that he could prepare business plans and drive to customer locations as of that time.  Rather, the evidence in the record supports the Social Security Administration's finding that as of the time predating his termination, he was totally disabled and was not capable of performing work, with or without any accommodations.  Summary judgment should issue, therefore, on the wrongful termination claim based on disability.

5.      *Hart's wrongful termination claim based on age*

The foregoing analysis applies with equal force to the element under the ADEA claim that Hart must have been qualified for his position at the time of termination.  Given the record evidence regarding the essential functions of Hart's position as a district sales manager and the evidence regarding his medical condition at the time of termination, a genuine issue of material fact does not exist as to whether Hart was capable of performing his job at a level which met his employer's legitimate expectations.

In the alternative, a genuine issue of material fact does not exist as to direct evidence that Ridge terminated Hart because of his age.  His direct evidence case depends upon several statements made by Slemko at times two or more years removed from the date of termination.  Both of these statements were to the effect that Slemko wanted to hire or the company should hire young aggressive sales persons.  Neither of the two comments was directed at Hart, and neither made reference to replacing existing sales persons with younger

individuals.  Furthermore, Slemko, based on the evidence in this record, was not involved in the decision to terminate Hart's employment.  Applying the standards identified by the Sixth Circuit in *Peters v. Lincoln Electric Company*,[79] the evidence regarding Slemko's statements, taken in the light most favorable to Hart, do not create a genuine issue of material fact as to direct evidence of a discriminatory termination.  The statements were not made by a person who made the decision to terminate Hart, did not relate to the decision-making process, were vague and isolated, and were not made proximate in time with the termination.

Further, as discussed above, even if direct evidence of age discrimination existed, Hart must still prove a causal link between that discrimination and his termination.[80]  Again, viewing the facts in the light most favorable to Hart, given the undisputed evidence of Hart's medical condition at the time of his termination and his inability to perform his job at that time, a reasonable juror could not conclude that Ridge terminated Hart because of his age rather than because of his incapability of performing his job.  Summary judgment, therefore, should be granted on the wrongful termination claim based on age.

## B. Wrongful termination in retaliation for a complaint of age discrimination

### 1. *Legal standards for retaliatory discharge for an age discrimination complaint*

To establish a prima facie case of retaliatory discharge, an employee must show that (1) he was engaged in a statutorily protected activity, (2) he suffered an adverse employment

---

[79] *Peters*, 285 F.3d at 477-78.

[80] *Bush*, 161 F.3d at 370.

action, and (3) there was a causal connection between the adverse employment action and protected activity.[81]

If the plaintiff makes a showing sufficient to establish a prima facie case, the burden shifts to the defendant employer to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action.[82]  If the defendant provides such a reason, the burden then shifts back to the plaintiff employee to show that the employer proffered reasons of pretext for unlawful discrimination.

Temporal proximity between the protected activity and the adverse employment action alone is not sufficient to establish a causal connection for a retaliation claim.[83]  A proximity of time of less than six months is generally required for consideration as evidence of a causal link between protected activity and retaliation.[84]  In addition to requisite temporal proximity, the plaintiff must establish that he was treated differently from other employees similarly situated.[85]

---

[81] *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).

[82] *Id.*

[83] *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 718 (6th Cir. 2007).

[84] *Sanchez v. Caldera*, 36 F. App'x 844, 846 (6th Cir. 2002); *Nguyen v. Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000); *Ellison v. DaimlerChrysler Corp.*, No. 3:06cv899, 2007 WL 3171758, at *8 (N.D. Ohio, Oct. 30, 2007); *Matricardi v. Astro Shapes, Inc.*, No. 4:04cv1317, 2007 WL 2902918, at **14-15 (N.D. Ohio, Sept. 29, 2007).

[85] *Clay*, 501 F.3d at 718.

-19-

## 2.    *Hart's retaliatory discharge claim*

There is no dispute here that Hart had engaged in a protected activity, a complaint about age discrimination made to Ridge's President, or that he suffered an adverse employment action, his termination.  Hart's retaliatory discharge claim turns on whether a causal connection existed between his complaint and his discharge.

No genuine issue of material fact exists regarding the absence of such a link.  First, Hart made his complaint in 2001 but remained employed until 2004.  Over three years transpired between the protected activity and the discharge.  His claim, therefore, lacks the requisite temporal proximity.  Further, even if such proximity existed, this record contains no evidence that Ridge treated Hart differently from any other employee in the context of his specific claim.  He has made no showing that Ridge retained other employees whose medical condition prohibited them from performing their job responsibilities beyond the time provided for by Ridge's policies.  The Court should enter summary judgment on the retaliatory discharge claim.

## V.   Conclusion

Based on the foregoing analysis, I recommend that summary judgment be issued on Hart's three remaining claims in this case – that he was wrongfully terminated because of a disability, that he was wrongfully terminated because of his age, and that he was wrongfully terminated in retaliation for making a claim of age discrimination.

As set forth below, Hart may make objections to this recommendation to Judge Nugent.  He should note, however, that such objections must be based upon the evidence submitted in connection with Ridge's summary judgment motion.  He may not submit new evidence not previously presented to the Court.

Dated:  December 4, 2007                    s/ William H. Baughman, Jr.
                                            United States Magistrate Judge

### Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[86]

---

[86] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).